An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-142
NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

IN THE MATTER OF:

JAMES SPENCER                          Wake County
                                       No. 13 SPC 05


Appeal by respondent from order entered 27 June 2013 by Judge Jacqueline Brewer in Wake County District Court.  Heard in the Court of Appeals 11 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Josephine Tetteh, for the State.*

> *Parker Poe Adams & Bernstein LLP, by Matthew W. Wolfe and Robert A. Leandro, for petitioner Holly Hill Hospital.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Mary Cook, for respondent.*


McCULLOUGH, Judge.


Respondent James Spencer appeals from a trial court's order, involuntarily committing him to an inpatient facility for a period not to exceed sixty (60) days.  Based on the reasons stated herein, we reverse the order of the trial court and remand this case to the trial court for the making of appropriate findings of fact.

## I.    Background

On 19 June 2013, Arlene Midgett filed an affidavit and petition for involuntary commitment in Tyrrell County District Court. The affidavit and petition for involuntary commitment stated that respondent James Edward Spencer was "mentally ill and dangerous to self or others or mentally ill and in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness." The affidavit also provided that the Sheriff's Department had received numerous calls from respondent's family about respondent's erratic behavior. Respondent had walked to a cemetery where his mother and brother are buried and told deputies that "he was going to sleep on the graves tonight." When deputies attempted to return respondent to his home, respondent replied that "they had just as well call Hitler from the dead and draw guns and go ahead and kill him now."

A hearing was held at the 27 June 2013 session of Wake County District Court. Dr. Muhammed Saeed examined respondent at Holly Hill Hospital on 24 and 25 June 2013. Dr. Saeed determined that respondent was mentally ill and suffered from chronic schizophrenia with an acute exacerbation. Dr. Saeed testified that respondent was "very paranoid" and had "grandiose

delusions." According to Dr. Saeed, respondent threatened the staff of Holly Hill Hospital as they were attempting to give respondent his medication. Consistent with reports contained in respondent's medical records, respondent threatened that he would stab the staff with a pen. Dr. Saeed recommended that respondent be committed to inpatient care for a period of sixty (60) days.

Respondent's sister, Auray Midgett, testified that she had a healthcare power of attorney to act on behalf of respondent. In May 2013, respondent was committed for six (6) days at Washington County Hospital in Plymouth, North Carolina. Respondent was released to outpatient treatment, but began calling various state prisons, offices in Washington, D.C. and President Barack Obama. Respondent seemed agitated, and based on his behavior, Ms. Midgett petitioned for involuntary commitment on 19 June 2013.

Angela Spencer, respondent's daughter, testified that one evening prior to his commitment in June 2013, respondent was at her home. Respondent was agitated and paranoid, and Ms. Spencer saw him pushing a fingernail file through her cable box. She called the police and respondent voluntarily left her home.

Respondent also testified at his hearing. He did not believe he needed to be treated at Holly Hill Hospital, but rather, preferred to be treated by a psychiatrist he had seen in the past.

The trial court entered an order on 27 June 2013, finding "by clear, cogent and convincing evidence" that "the respondent contests commitment. Stipulate to mental illness, a danger to self, and others, and in need of treatment." The trial court concluded that respondent was mentally ill and dangerous to himself and others. Based on the foregoing, respondent was involuntarily committed to an inpatient facility for a period not to exceed sixty (60) days.

From this order, respondent filed notice of appeal on 25 July 2013.

## II. Discussion

Respondent's sole argument on appeal is that the trial court erred by involuntarily committing him when the 27 June 2013 order was not supported by sufficient written findings of fact. The State and petitioner Holly Hill Hospital agree with respondent that the findings made in the involuntary commitment order were insufficient and urge our Court to reverse the trial

court's order and remand this case to the trial court for the making of appropriate findings of fact.

We first note that

> even though the term for respondent's involuntary commitment has passed, a prior discharge will not render questions challenging the involuntary commitment proceeding moot. When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot.

*In re Allison*, 216 N.C. App. 297, 299, 715 S.E.2d 912, 914 (2011) (citations and quotation marks omitted).

> On appeal of a commitment order our function is to determine whether there was *any* competent evidence to support the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the "facts" recorded in the order. We do not consider whether the evidence of respondent's mental illness and dangerousness was clear, cogent and convincing. It is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof.

*In re Collins*, 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980) (citations omitted).

Section 122C-268(j) of the North Carolina General Statutes provides that

> [t]o support an inpatient commitment order,

> the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b. The court shall record the facts that support its findings.

N.C. Gen. Stat. § 122C-268(j) (2013).

In the case *sub judice*, the trial court checked the box on the printed form that reads "[b]ased on the evidence presented, the Court by clear, cogent and convincing evidence finds these other facts: the respondent contests commitment. Stipulate to mental illness, a danger to self, and others, and in need of treatment." The trial court did not make additional findings of fact or record any facts to supporting these findings.

It is well established that we may not determine whether the evidence was sufficient because the trial court failed to make any findings of fact based on the evidence presented at the 27 June 2013 hearing for us to review. *See In re Booker*, 193 N.C. App. 433, 437, 667 S.E.2d 302, 304-305 (2008). Thus, because the trial court's order is insufficient to support the trial court's determination that respondent was dangerous to himself and to others, we reverse the trial court's order and remand this case to the trial court for the making of appropriate findings of fact. *See In re Allison*, 216 N.C. App.

at 300, 715 S.E.2d at 915 (reversing and remanding for appropriate findings when the trial court failed to make written findings of fact or failed to incorporate by reference a physician's report in the respondent's involuntary commitment order).

## III. Conclusion

Because the involuntary commitment order contained insufficient findings of fact to support its determination that respondent was mentally ill and dangerous to himself and others, we reverse the order of the trial court and remand this case to the trial court for the making of appropriate findings.

Reversed and remanded.

Judges STEELMAN and ERVIN concur.

Report per Rule 30(e).